**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL NO. 1:07CV87**

| | | |
|---|---|---|
| **ALLORA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **ORDER** |
| **BROWNSTONE, INC.; JAMES** | ) | |
| **WALKER; and STEVE ROSONINA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

     **THIS MATTER** is before the Court on motion of Plaintiff Allora, LLC,

for a preliminary injunction seeking to enjoin Defendants Brownstone, Inc.,

James Walker, and Steve Rosonina from "reproducing, altering, publishing,

advertising, selling, distributing, or otherwise using Allora's copyrighted

architectural designs and directing the Defendants to cease using such

plans to continue the construction of houses based on the designs."

**Plaintiff's Memorandum in Support of Motion for Preliminary**

**Injunction, filed March 2, 2007, at 1.**

## I. FACTUAL BACKGROUND

Plaintiff Allora, LLC, is a South Carolina real estate development and construction company which also designs architectural works used for constructing and marketing personal residence homes. *Id.* **at 1.** Plaintiff is also the owner of three specific copyrighted architectural designs of residential homes, referred to in this litigation as the Allora designs #'s 5005, 5011, and 5019. *Id.* **at 1-2.** Plaintiff sells licenses of these copyrighted designs to real estate developers, but places certain geographic restrictions on a number of these designs to preserve their unique quality and marketability due to Plaintiff's own residential development business. *Id.* **at 2-3.** Defendant Brownstone, Inc., is a Georgia company engaged in the business of real estate development and residential construction. **Complaint, filed March 2, 2007, at 2.** Defendants James Walker and Steve Rosonina are employees of Defendant Brownstone and currently act as principals, officers, and directors of Brownstone, Inc. **Plaintiff's Memorandum,** *supra***, at 1-2.**

In March and May of 2006, Defendant Brownstone, through Defendants Rosonina and Walker, purchased licenses through Donald A. Gardner Architects – a sister company to Plaintiff – to construct one home

from each of the three aforementioned copyrighted architectural designs owned by Allora. **Defendants' Response to Plaintiff's Motion for Preliminary Injunction, filed March 22, 2007, at 1-5.** These three particular designs – #'s 5005, 5011, and 5019 – are geographically restricted for non-use in Asheville, North Carolina, and particularly in the 28805 zip code, among other localities. **Complaint,** *supra***, at 4.** According to Plaintiff, Defendants were explicitly told verbally and in writing that there were geographic restrictions limiting where these designs could be used, and that such restrictions were conspicuously placed on the website where Defendants first discovered the designs as well as on a label which sealed the cardboard tubing used to house and deliver the designs to Defendants. *Id.* **at 5.** Plaintiff also contends Defendants understood the geographic restrictions on the designs but assured the receptionist at Donald Gardner Architects that the designs would be used on residences located to the southeast of Atlanta, Georgia. *Id.*

Defendants, however, began construction of a residential house based upon the Allora design plan #5011 within the 28805 zip code of Asheville, North Carolina, in June 2006. **Defendants' Response,** *supra***, at 5.** Defendants also began preliminary construction of homes based

upon the Allora designs #'s 5005 and 5019 within the 28805 zip code in September 2006. *Id.* In December 2006, Skip Brewer, an employee of Allora, learned of Defendants' construction projects using the Allora plans against the terms of their restrictions, and visited the construction site to confirm his suspicions. **Plaintiff's Memorandum,** *supra***, at 2-4; Affidavit of Skip Brewer,** *attached to* **Plaintiff's Memorandum, at 1-2.** Brewer spoke with Defendant Walker on site, who allegedly confirmed the use of the Allora designs within the 28805 zip code. **Plaintiff's Memorandum,** *supra***, at 2-4; Brewer Affidavit,** *supra***, at 2-3.** Brewer asserts he took pictures of the early stages of construction on these homes and advised Defendant Walker to cease construction. **Plaintiff's Memorandum,** *supra***, at 2-4; Brewer Affidavit,** *supra.*

Thereafter, Plaintiff sent a letter to Defendants detailing their violation of the geographic restrictions attached to the design plans licensed by Defendants, and requested they stop construction of these particular homes. *Id.* **at 6.** Plaintiff offered to allow Defendants to finish construction on the home based upon the #5011 design plan despite the restrictions, as the construction for that home had already substantially begun, so long as Defendants destroyed or returned the design plans for #'s 5005 and 5019.

*Id.* The letter also stated the licenses to the design plans #'s 5005 and 5019 were revoked, and that the offer to complete construction of the #5011 residence would be revoked if Defendants did not respond by the end of January 2007. *Id.*; **Complaint,** *supra***, at 5-6.** Defendants never responded to Plaintiff's letter, nor did they destroy or return the design plans #'s 5005 or 5019. **Complaint,** *supra***, at 5-6.** Plaintiff then revoked Defendants' license to design plan #5011. *Id.* Defendants, however, have continued construction of the homes based upon the Allora design plans, despite Plaintiff's request to stop construction and revocation of the licenses to use the copyrighted design plans, and the homes are now 95 percent, 60 percent, and 30 percent complete, respectively. **Plaintiff's Memorandum,** *supra***, at 6; Affidavit of Steven Rosonina, at 6,** *attached to* **Defendants' Response,** *supra***.**

In addition to the alleged infringement based upon the construction of these homes, Plaintiff contends that Defendants have "published, distributed, marketed, advertised, constructed, and sold" Plaintiff's copyrighted design plans by including Plaintiff's actual design plans in Defendants' real estate listings while deleting Plaintiff's copyright symbol on the plans. **Complaint,** *supra***, at 6.** Defendants readily admit to the

infringing action of placing Plaintiff's designs on its real estate listings, and upon receiving notice of the infringing nature of their actions regarding the real estate listings, Defendants removed Plaintiff's design plans from the listings.

Because of Defendants' actions, Plaintiff has filed the present law suit for copyright infringement pursuant to 17 U.S.C. § 101 *et seq*. **Complaint,** *supra***, at 6-7.** Plaintiff has also filed a motion for preliminary injunction asking the Court to enjoin Defendants from "reproducing, altering, publishing, advertising, selling, distributing, or otherwise using Allora's copyrighted architectural designs and directing the Defendants to cease using such plans to continue the construction of houses based on the designs" in further violation of copyright law. **Plaintiff's Memorandum,** *supra***, at 1.** Defendants' have filed their collective answer to Plaintiff's complaint, and have responded to Plaintiff's motion for preliminary injunction, in which they claim Plaintiff has not satisfied the traditional burden placed upon parties seeking a preliminary injunction. **Defendants' Answer, filed March 27, 2007; Defendants' Response,** *supra***, at 24.** This Court held a hearing on Plaintiff's motion for preliminary

injection on April 20, 2007, and heard argument from both parties.

Accordingly, the matter is now ripe for the Court's ruling.

## II.  STANDARD

The decision to grant or deny interim injunctive relief is within the

sound discretion of the district court.  **See Hughes Network Sys. v.**

**InterDigital Commc'ns Corp.**, **17 F.3d 691, 693 (4th Cir. 1994).**  "Granting

a preliminary injunction requires that a district court, acting on an

incomplete record, order a party to act, or refrain from acting, in a certain

way.  The danger of a mistake in this setting is substantial."  **Scotts Co. v.**

**United Indus. Corp.**, **315 F.3d 264, 284 (4th Cir. 2002) (citations and**

**internal quotations omitted).**  As such, a preliminary injunction is

considered "an extraordinary remedy involving the exercise of a very far-

reaching power, which is to be applied 'only in [the] limited circumstances'

which clearly demand it."  **Direx Israel, Ltd. v. Breakthrough Med. Corp.**,

**952 F.2d 802, 811 (4th Cir. 1992) (quoting Instant Air Freight Co. v. C.F.**

**Air Freight, Inc.**, **882 F.2d 797, 800 (3d Cir. 1989)).**  "Whenever the

extraordinary writ of injunction is granted, it should be tailored to restrain

no more than what is reasonably required to accomplish its ends. Particularly is this so when preliminary relief, on something less than a full record and full resolution of the facts, is granted." ***Consolidation Coal Co. v. Disabled Miners of S. W. Va.***, 442 F.2d 1261, 1267 (4th Cir. 1971); ***see also Anheuser-Busch, Inc. v. Stroh Brewery Co.***, 750 F.2d 631, 653 (8th Cir. 1984) ("Injunctions must be tailored narrowly to remedy the specific harm shown rather than to enjoin all possible breaches of the law.").

The Court applies a four-part balancing test, known as "the hardship balancing test," to determine whether interim injunctive relief should issue. ***Direx Israel, Ltd.***, 952 F.2d at 812. Under this balancing test, the Court must consider the following, known collectively as the *Blackwelder* factors: "(1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest."[1] ***East Tennessee Natural Gas Co. v. Sage***, 361

---

[1] The Court is also guided by Fed. R. Civ. P. 65 which governs the procedural requirements attendant to the granting of injunctive relief. **Fed. R. Civ. P. 65;** ***see also Maryland Dep't of Human Resources v. United States Dep't of Agriculture***, 976 F.2d 1462, 1483 (4th Cir. 1992).

**F.3d 808, 828 (4th Cir. 2004) (citing *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir.1977)); *see also Willis v. Town of Marshall*, 426 F.3d 251, 267 (4th Cir. 2005) (quoting *Direx Israel, Ltd.*, at 812); *Wetzel v. Edwards*, 635 F.2d 283, 287 (4th Cir. 1980).** Although no one factor is generally dispositive,[2] "[t]he irreparable harm to the plaintiff and the harm to the defendant are the two most important factors" for the Fourth Circuit's analysis under *Blackwelder*. **Direx Israel, Ltd., 952 F.2d at 812.** As the Fourth Circuit has further explained,

> When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. If the balance of the hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. But if the balance of hardships is substantially equal as between the plaintiff and defendant, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.

---

[2] A failure to show any risk of irreparable harm is sufficient grounds for denial of a motion for interim injunctive relief, as likelihood of success on the merits alone - without any showing of a risk of irreparable harm - is not sufficient to warrant the issuance of a preliminary injunction. **See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977).**

***Scotts Co.*, 315 F.3d at 271 (internal quotations and citations omitted).**

Thus, as a threshold matter, "[t]he plaintiff must make a 'clear showing of irreparable harm . . . , *and the required irreparable harm must be neither remote nor speculative, but actual and imminent*.'" ***Id.* at 283 (quoting *Direx Israel*, 952 F.2d at 812) (emphasis added).** Only after a plaintiff's clear showing of irreparable harm should a court then conduct a balancing of hardships and, if necessary, consider the likelihood of success and the public interest in ruling on the preliminary injunction. When considering the harm to the parties flowing from the issuance or non-issuance of the requested preliminary injunction, the real issue for the Court's consideration is the level of harm resulting from the improper grant or denial of the petitioner's request. ***Id.* at 284.**

> If the judge grants the preliminary injunction to a plaintiff who it later turns out is not entitled to any judicial relief – whose legal rights have not been violated – the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the injunction causes to the defendant while it is in effect. If the judge denies the preliminary injunction to a plaintiff who it later turns out is entitled to judicial relief, the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the denial of the preliminary injunction does to the plaintiff.

***Id.* at 284-85 (quoting *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).** The Court focuses on the

harm attendant to an improper grant or denial because there is no "harm,"
at least as that term is used in the realm of equity and equitable relief,
where a party is restrained from doing that which it may properly be
restrained from doing, or where the court refuses to restrain a party from
doing that which it may properly do.

## III.  ANALYSIS

### A.  Defendants' Real Estate Advertisements

First, the undersigned notes that the parties and the Court agree that
Defendants' use of Plaintiff's copyrighted materials in the content of their
real estate listings or advertisements infringes upon Plaintiff's copyrights in
the design plans.  Although Defendants have removed Plaintiff's
copyrighted designs from their advertisements, Defendants conceded at
the April 20, 2007, hearing to an injunction which prohibits Defendants
from further "reproducing, altering, publishing, advertising, selling,
distributing, or otherwise using Allora's copyrighted architectural designs"
in any manner not associated with the construction of the three disputed
house projects.  **Plaintiff's Memorandum, *supra*, at 1.**  Accordingly, this
Court will grant Plaintiff's motion for preliminary injunction and Defendants

will be enjoined from using Plaintiff's copyrighted materials in the content of their real estate listings or advertisements or in ways not related to the completion of construction.  **Plaintiff's Memorandum,** *supra***, at 1.**

### B. Defendants' Construction of Houses

At the outset, there is a dispute between the parties as to the applicable burden of proof associated with preliminary injunctions in copyright infringement law suits.  Plaintiff asserts that "[i]n deciding motions for preliminary injunctions in the context of copyright law, the burden of proof that the plaintiff is required to meet is lower than in other situations."  *Id.* **at 13.**  In support of this argument, Plaintiff notes "[u]nder Fourth Circuit precedent, if a plaintiff establishes a prima facie case of copyright infringement, a court is 'entitled to presume that . . . [the plaintiff] could show both probable likelihood of success on the merits and irreparable harm.'"  *Id.* **at 13-14 (citing** *Nat'l Med. Care, Inc. v. Julian L. Espiritu, MD***, 284 F.Supp.2d 424, 431 (S.D. W.Va. 1996)) (internal citation omitted).**  Although Plaintiff stated during oral argument that the decision to presume irreparable harm and likelihood of success following a prima facie case of copyright infringement remains within the Court's discretion,

Plaintiff argues Fourth Circuit precedent encourages – and virtually requires – this Court to exercise its discretion and presume these two factors in granting a preliminary injunction for Plaintiff.

In 2006 the United States Supreme Court clarified the confusion over the burden associated with preliminary injunctions in copyright actions by stating,

> the Copyright Act provides that courts "may" grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). And as in our decision today, *this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.*

*eBay Inc. v. MercExchange, LLC*, __ U.S. __, 126 S.Ct. 1837, 1840 (2006) (emphasis added). Although this statement could be considered dicta, it reflects a line of thought expressed by a unanimous Supreme Court which should be given greater weight than Plaintiff's citation of older Fourth Circuit precedent. Furthermore, the Fourth Circuit has since addressed the Supreme Court's opinion in *eBay*, albeit in a more limited fashion, by recognizing that the *eBay* Court held "any relief granted in equity is at the discretion of the district court, and a petitioner cannot claim

that it was *entitled* to injunctive relief." ***Christopher Phelps & Assoc.,***

***LLC v. Galloway*, 477 F.3d 128, 143 (4ᵗʰ Cir. 2007).**

However, while it is clear that a plaintiff's showing of a prima facie

case of copyright infringement will not automatically entitle a plaintiff to a

preliminary injunction, what remains a question in the wake of *eBay* is

whether, as Plaintiff suggests, this Court *should* presume irreparable harm

and likelihood of success on the merits upon a showing of a prima facie

case of copyright infringement by a plaintiff. Until this issue is clarified by

the Fourth Circuit or the Supreme Court, this Court will not *presume*

irreparable harm and likelihood of success on the merits following a prima

facie showing of copyright infringement, but will instead treat copyright

cases in the same manner as any other civil action requesting a

preliminary injunction. That is, Plaintiff must satisfy the traditional test set

forth in *Blackwelder* and its progeny to succeed on a motion for preliminary

injunction.

The first step in evaluating Plaintiff's motion for preliminary injunction

under *Blackwelder* is to determine whether Plaintiff will suffer irreparable

harm without an injunction. ***Scotts Co.*, 315 F.3d at 271.** As stated

above, "[t]he plaintiff must make a 'clear showing of irreparable harm . . . ,

and the required irreparable harm must be neither remote nor speculative, but actual and imminent.'" ***Id.*** **at 283 (quoting *Direx Israel*, 952 F.2d at 812).** Furthermore, "[w]here the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." ***Hughes Network, supra*, at 694.** However, where money damages are difficult to ascertain, or where the failure to grant the injunction results in potential permanent loss of customers and goodwill, courts have found the irreparable harm prong of *Blackwelder* to be satisfied. ***See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551-52 (4th Cir. 1994).**

Plaintiff contends it has suffered and continues to suffer irreparable harm through Defendants' continued infringing use of its copyrighted design plans. **Plaintiff's Memorandum, *supra*, at 10.** Plaintiff claims that because "[c]opyrighted material is so unique . . . its infringement cannot be fully compensated by monetary damages." ***Id.* (citation omitted).** However, Plaintiff fails to detail exactly how it is harmed by Defendants' continued construction of these three homes except to generally allege that its prima facie showing of copyright infringement is evidence of "irreparable

harm *per se*" and entitles the Court to presume irreparable harm under *Blackwelder* – a notion which, as stated above, this Court rejects. ***Id.* at 8, 10-11, 13-15.** Plaintiff's only arguments regarding specific harms suffered as a result of Defendants' actions concern the use of Plaintiff's design plans in Defendants' advertisements – which Defendants concede infringed the copyright and have been remedied – and the potential loss of customers Plaintiff will experience if Defendants' homes are allowed to exist. ***Id.* at 10-11.** While ultimate proof of the latter argument may show a degree of harm to Plaintiff, the undersigned is hard-pressed to characterize the existence of three homes as *irreparable* harm which monetary damages cannot sufficiently remedy. If Defendants were building an entire community of houses based upon these three designs to rival Plaintiff's proposed development in the 28805 zip code, Plaintiff's argument that Defendants' actions cause the designs to lose their unique quality and deprive Plaintiff of potential buyers would be much more feasible and immediate. However, Defendants are constructing three homes – one of each design purchased – and the undersigned simply cannot find, at this point in the litigation, that the existence of these three homes substantially

and irreparably harms Plaintiff beyond a point that monetary damages cannot address.

Even were the Court to consider Plaintiff's urged presumption of irreparable harm, it is not clear that Plaintiff has established a prima facie case of copyright infringement. While it is true that Plaintiff is the copyright owner of these disputed design plans, Plaintiff conceded at the hearing that Defendants legally purchased licenses to these copyrighted materials. Therefore, this law suit primarily revolves around a mere contractual dispute in the form of a license agreement that allegedly contained geographic restrictions on Defendants' licensed use of the copyrighted design plans. Plaintiff's attempt to establish a prima facie case of copyright infringement rests upon the Court's acceptance of certain factual contentions asserted by Plaintiff – namely, the existence of said restrictions attached to the copyright licenses and Defendants' notice of them – which, after considering the evidence on the record thus far, are unclear and remain questions of fact. Accordingly, the undersigned refuses to presume irreparable harm based upon Plaintiff's claimed showing of a prima facie case of copyright infringement, and further finds Plaintiff has not established a "clear showing of irreparable harm" which is "neither remote

nor speculative, but actual and imminent" at this juncture. ***Direct Israel***, ***supra***, **952 F.2d at 812.**

*Assuming arguendo* that the Court found Plaintiff has suffered irreparable harm resulting from Defendants' continued construction of these three homes, the Court would not find at this point in the litigation that Plaintiff is entitled to a preliminary injunction under *Blackwelder*. If the Court did not enter an injunction against Defendants' ability to complete construction of these three homes, Plaintiff would suffer harm in the form of additional competition for similar houses based upon Plaintiff's design plans. Further, the uniqueness of Plaintiff's design plans would be somewhat diluted by having additional houses in an area where an entire community of these houses is intended to be constructed. However, as stated before, Defendants are only constructing three houses, which appears to lessen the extent of harm suffered by Plaintiff if no injunction is issued.

Defendants, on the other hand, are subject to much greater immediate harm than Plaintiff's very slight increase in competition and decrease in unique quality. Plaintiff's contention that Defendants' harm "consists only of the cessation of their infringement of Allora's copyrights"

appears to be over-simplified.  **Plaintiff's Memorandum,** *supra***, at 11.**
Were the Court to issue an injunction, Defendants would not be allowed to
complete construction of these homes and thus would be prevented from
selling these homes, which they contend would destroy their reputations
with financial institutions and subcontractors whom Defendants are
currently indebted.  **Defendants' Response,** *supra***, at 19-20.**  Said
another way, the granting of an injunction preventing the completion and
sale of these homes could cause massive damage to Defendants'
reputations and financial stability.  Such harm is much more obvious and
immediate than the harm detailed by Plaintiff.  Accordingly, the Court finds
that, had Plaintiff demonstrated irreparable harm, the balance of hardships
required by the Fourth Circuit would undoubtedly tip in favor of Defendants
and against granting an injunction.

As an additional and final consideration, the undersigned notes the
impact of Plaintiff's request for preliminary injunction on all parties not
associated with this lawsuit.  Were the Court to issue an injunction
preventing Defendants from completing construction of these three homes,
a number of subcontractors and laborers hired to work on these homes
would be deprived of their means to make a living.  Additionally, the

neighborhood surrounding these homes would be left with the unpleasant site and potential hazards associated with incomplete construction projects for an undetermined and likely lengthy amount of time.  Finally, it appears to the undersigned that stopping construction of three homes – which are said to be 95 percent, 60 percent, and 30 percent completed at this time – would be an utter waste of resources which the Court does not wish to impose on this community.

In summation, the Court finds Plaintiff has failed to demonstrate a clear showing of irreparable harm suffered as the result of Defendants' continued construction of the three homes based upon Plaintiff's copyrighted design plans.  Had Plaintiff succeeded in its attempt to demonstrate irreparable harm, the Court would nevertheless find Defendants would suffer greater harm with the injunction imposed than Plaintiff would suffer without an injunction.  Additionally, the Court would have found the injunction to negatively effect the lives of numerous third parties as well as waste a number of resources.  Accordingly, Plaintiff's motion for a preliminary injunction halting construction of Defendants' three homes based upon Plaintiff's design plans will be denied, and Defendants

will be allowed to complete construction on the three houses currently being built.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for preliminary injunction is **GRANTED IN PART and DENIED IN PART**, as reflected in the Preliminary Injunction filed contemporaneously herewith.

**IT IS FURTHER ORDERED** that, on or before 20 days from entry of this Memorandum and Order, the parties shall meet and confer as provided by Fed. R. Civ. P. 26(f) and file a proposed discovery plan within five days of such conference.  ***See also***, **Local Rule 16.1.**

Signed: April 27, 2007

Lacy H. Thornburg
United States District Judge